HICKORY MARBLE AND GRANITE COMPANY v. SOUTHERN
RAILWAY COMPANY.

(Filed 11 March, 1908).

1. **Railroad Companies—Penalty Statutes—Transportation—Revisal, 2632—Constitutional Law—Commerce Clause.**
   Revisal, sec. 2632, by its language applies only to the transit of goods carried by railroad companies from and to points within the State, and therefore questions relating to its constitutionality respecting the commerce clause of the Federal Constitution are not pertinent to the inquiry thereunder.

2. **Railroads—Evidence—Transportation—Revisal, 2632—Interstate Commerce—Action Dismissed.**
   When it does not appear from the evidence, in a suit for the recovery of a penalty against a railroad company, under Revisal, 2632, concerning delays in transit of certain goods from a point in Georgia to a point in North Carolina, whether the alleged delay occurred in Georgia, South or North Carolina, the judgment in plaintiff's favor in the court below will be reversed, and the action dismissed.

CIVIL ACTION, tried on appeal from a judgment of a justice of the peace, before *Councill, J.,* and a jury, at May Term, 1907, of the Superior Court of CATAWBA County.

This is an action for the recovery of a penalty, under section 2632 of the Revisal, the plaintiff alleging an unreasonable delay in the transportation of a carload of marble from Atlanta, in the State of Georgia, to Hickory, in this State. It did not appear from any evidence in the case whether the

alleged delay was in the State of Georgia, in the State of
South Carolina or in this State. Defendant moved to non-
suit the plaintiff. The motion was overruled, and the de-
fendant excepted. There was a verdict in favor of the plain-
tiff for the amount of the penalty given by the statute, and
judgment was entered thereon. Defendant excepted and ap-
pealed.

*M. H. Yount, W. C. Feimster* and *D. Lester Russell* for
plaintiff.

*S. J. Ervin* for defendant.

WALKER, J., after stating the case: The section of the Re-
visal imposing the penalty which the plaintiff seeks to recover
in this case is assailed by the defendant upon the ground that
the Legislature has thereby attempted to regulate commerce
between the States. "Commerce between the States consists
of intercourse between their citizens, and includes the trans-
portation of persons and property and the navigation of pub-
lic waters for that purpose, as well as the purchase, sale and
exchange of commodities, and the power to regulate that com-
merce involves the right to prescribe rules by which it shall
be governed—that is, the conditions upon which it shall be
conducted." *Gloucester Ferry Co. v. Pennsylvania,* 114
U. S., 196. We do not deem it necessary to decide the im-
portant question whether the statute in question is in conflict
with the commerce clause of the Constitution of the United
States. The construction of a statute involving the exercise
even of a doubtful power will not readily be adopted, in the
absence of direct words, where the language used reasonably
admits of another which will exclude the question of constitu-
tional authority to enact the particular law. Black on Inter-
pretation of Laws, p. 89, sec. 42; *Mardre v. Felton,* 61 N. C.,
279. Section 2632 purports to deal with the entire actual
transit of the goods from the time they leave the initial sta-
tion until they reach their final destination. It is a principle

universally recognized that laws have no extraterritorial
effect.    Their operation is limited to the territorial jurisdic-
tion of the State or country that enacts them.    Rorer on Inter-
state Law, pp. 12, 226, 227.    We cannot think the Legisla-
ture intended by section 2632 to determine what should be
the reasonable or ordinary time for transporting goods through
another State, and to provide what allowance should be made
for delays at the receiving station and at intermediate points
in that State.    Where there is a shipment from Atlanta to
Hickory on a through bill of lading, the transit is a con-
tinuous one, and, in order to determine whether there has
been an unreasonable delay which subjects the carrier to the
payment of the penalty for the default, it would become neces-
sary to consider the time that would reasonably be consumed
in accomplishing the entire journey.    If the Legislature of
the State intended by section 2632 to include interstate ship-
ments, it would reach beyond the territorial jurisdiction of
this State and prescribe a rule for determining whether there
has been an unreasonable delay there, and the law must ope-
rate in another State, where the carrier's duty and responsi-
bility for delay in transportation may be fixed by a principle
very different from—nay, in direct conflict with—that pre-
scribed by our statute.    It cannot be doubted that the Legis-
lature intended by section 2632 to refer to the entire transit—
that is, from the initial station to the terminal station—for
this intent is clearly indicated by the very words of the sec-
tion.    The language is: "It shall be considered that such
transportation company has transported freight within a rea-
sonable time if it has done so in the ordinary time required
for transporting such articles of freight *between the receiving
and the shipping stations.*"  (Italics ours).    It contemplated,
therefore, dealing with the carrier, in respect of delays in
shipments, not merely within the limits of this State, but
within the territory of another State, if we should hold that
interstate shipments are within the meaning and intent of the

law. Such a construction would raise a grave constitutional question. We would have to decide whether such control of the carrier in the transportation of goods is merely local in its nature and, while incidentally affecting commerce between the States, is in aid thereof, and such as falls within the police power of the State, or whether it is of a national character and requires uniformity throughout the entire journey— that is, from the station where the goods are received to the one where they are to be delivered. *Harrill v. Railway,* 144 N. C., 532; *Morris v. Express Co.,* 146 N. C., 167.

This Court, in the case of *McGwigan v. Railroad,* 95 N. C., 428, construed a statute somewhat similar in phraseology to section 2632 of the Revisal, and held that it did not apply to interstate shipments. It laid some stress upon the words in that statute, "any railroad corporation operating in this State." The corresponding words in section 2632 are "any railroad company doing business in this State." While the description of the carrier in the two statutes is expressed in different words, the meaning must be the same. But the intention of the Legislature to confine the operation of the law to shipments within the State is more apparent in section 2632 of the Revisal than was the same intention in section 1966 of The Code, which was construed in *McGwigan v. Railroad,* by reason of the fact that a different construction of section 2632 would impute to the Legislature the purpose of prescribing a positive rule for determining what shall constitute a proper transportation in a foreign State, where its own laws cannot operate, as the provision concerning the time allowed for delays, and as to what shall constitute an unreasonable delay, is not to be found in section 1966 of The Code.

It is not necessary, in the view we take of section 2632 of the Revisal, to consider the question, so ably and learnedly discussed before us by counsel, as to the constitutional power of the Legislature to prescribe a penalty for delay in the shipment of freight from another State into this State, provided

the exercise of the power, or the legislation itself, is confined to delays occurring wholly within this State. If the section embraces any legislation which is not local in its nature, and, although in aid of commerce, is a regulation thereof, within the meaning of those terms as defined by the Court having final or ultimate jurisdiction to decide such a question, the statute is void to the extent that it exceeds the proper limit of legislative power prescribed to the State by the Constitution of the United States, as construed by that Court. When the purpose of the legislation is of such a kind as to require uniformity, then, in order "to bring the transportation within the control of the State as part of its domestic commerce, the subject transported must be, within the entire voyage, under the exclusive jurisdiction of the State." This limitation of the power of the State to regulate commerce was stated in the words we have above quoted by *Justice Fields* in *Steamship Co. v. Railroad Co.,* 9 Sawyer, 253, and afterwards adopted by the Supreme Court of the United States as a concise and accurate statement of the principle governing such cases, in *Hanley v. Railway Co.,* 187 U. S., 617. See, also, *Lord v. Steamship Co.,* 102 U. S., 541. Even when State legislation has been considered as affecting interstate commerce only incidentally and as a proper exercise of the police power, it has been upheld only upon the ground that it was in furtherance of the purpose contemplated by the commerce clause of the Federal Constitution, and, therefore, not within its prohibitive terms as being a regulation of interstate traffic.

Instead of entering upon a consideration of the question whether section 2632 comes within the class of legislation permissible to the State as not being a regulation of commerce, we have preferred to construe the section, according to its plain meaning, as intended to apply only to intrastate shipments, or those which do not require any departure from the territory of the State in order to execute the contract of carriage. This

meaning conforms ·to the elementary rules of interpretation and avoids the decision of any doubtful constitutional question.

The court should have sustained the motion to nonsuit at the close of the evidence, and erred in refusing the same.

We do not decide, or even undertake to consider, in this case the question as to what is the duty and liability of the carrier at each end of the transit, under the law imposing penalties for delays in shipping and delivering goods, but only the question as to whether section 2632 affects interstate commerce or was intended to apply solely to commerce within the borders of the State. What we have said, therefore, must be construed as referring only to the actual transit of the goods from the initial to the terminal station.

The judgment is reversed and the action is dismissed.

Reversed.